**Frank A. WEINSTEIN, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Northeast Region in New York, Defendant.**

CV–84–0771.

United States District Court, E.D. New York.

May 22, 1989.

Frank A. Weinstein, pro se.

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y. Attorney for Defendant by Charles S. Kleinberg, Asst. U.S. Atty., for defendant.

MEMORANDUM DECISION
AND ORDER

SIFTON, District Judge.

This is an action brought by plaintiff, Frank Weinstein, pursuant to Title VII of the Civil Rights Act of 1964, seeking relief because of alleged discrimination in a failure to promote plaintiff to a position as EEO counselor within the Post Office by reason of his race, sex and age. The matter was tried before the undersigned sitting without a jury on May 15 and 16, 1989. Based on the evidence produced, it is clear that plaintiff was not discriminated against in the decision not to promote him. Accordingly, plaintiff is entitled to no relief from this Court. What follows sets forth the findings of fact and conclusions of law on which that determination is based as required by Rule 52(a) of the Federal Rules of Civil Procedure.

Plaintiff, who is currently retired from the Post Office, was a nineteen-year letter carrier who served most of his career in the Far Rockaway station in this District. At the time of the events here in question, he had reached the highest salary grade and step available in his job category, Level 5, Step 12, and was seeking greater opportunities for advancement by means of a promotion into an area not involving mail handling.

Plaintiff had ample grounds to hope that he would be successful in this effort since he had pursued educational opportunities outside the Post Office. These efforts became oriented principally towards the Post Office Inspectional Services for which plaintiff prepared by seeking training in criminal justice. Unfortunately, at the time plaintiff was approaching the conclusion of this educational career, he found the door closed to entry in Inspectional Services by reason of his age.[1]

Plaintiff next turned his efforts at advancement to the position of EEO investigator, a job involving the investigation of the factual basis for complaints of discrimination in employment that could not be resolved by conciliation. Again, it is entirely understandable that plaintiff would consider his education in criminal justice as well as in other aspects of business management of some use to him in obtaining such a position.

Plaintiff first applied for an opening as an EEO investigator in the spring of 1979. While it is unclear what the race, age and sex of all of plaintiff's competitors for this position were,[2] the person selected was a male who on the face of it was better qualified for the job than plaintiff since the person selected had already served in the position on an ad hoc basis. In October 1979, plaintiff again applied for an opening as an EEO investigator at a salary level 17 through 19. This time, he was selected to appear for an interview for that position as well as for an opening for EEO investigator at a salary level 20. He was, however, turned down for both these positions. Plaintiff apparently complained at this point to his Congressman, who wrote to the Post Office in Washington. Plaintiff contends that the Post Office's response to the Congressman's letter misdescribed the number of EEO investigator positions available to be filled at this time as four, when in fact fourteen were available. It may be that the Post Office was referring to the openings in the vicinity of plaintiff's station at the time, but in any event there appears no reason to attribute the error by the Post Office's Government Relations Department in Washington to any discriminatory or other animus at the level at which the selection process was going on in New York. The race and age of the persons selected for the fourteen positions (throughout the Northeast region as far away as Boston and Hartford) is not apparent from this record. It appears from their names, however, that all but one of the fourteen investigators were men. Nor is the race or age of the selection panel known, except for one member, Thomas O'Garro, who testified at trial that he is black and the same age as plaintiff. The three selecting officials were all men.

In July 1980, plaintiff applied and was turned down for a position as EEO counselor at a salary level of 15. Not only are the race, sex and age of the other applicants for this position not established, but no evidence was presented as to the race, sex or age of the successful candidate or the

---

1. Plaintiff has at no time challenged the presumably job-related age limitations for entry-level positions in the Post Office's police force.

2. Plaintiff excuses his failure to present evidence on this subject by claiming that he was barred from discovering it by reason of the provisions of the Privacy Act. However, as must have become apparent to plaintiff when he secured information as to the age, sex and race of his competitors for the job of EEO counselor for which he was turned down in June 1981, the Privacy Act did not prevent plaintiff from obtaining this information. Indeed, in a comment on a letter from the Post Office relying on the Privacy Act to rebuff his efforts to find out the name, titles, and "background" of one individual selected, plaintiff notes: "I checked the Privacy Act and it really does not have much to do with this overall situation."

selecting officials.[3]

The failure to promote which is the subject of this lawsuit occurred in June 1981 as a result of plaintiff's application to fill a position as an EEO counselor in the Hicksville office. While it seems clear that plaintiff possessed at least the minimum qualifications for this position, it is also clear that the reason he was not selected was because the person who was selected was far better qualified for the job than plaintiff and that plaintiff's rejection was entirely non-discriminatory. In this connection, it is appropriate to review plaintiff's pertinent qualifications and those of the woman selected.

Plaintiff's experience within the Post Office was almost exclusively as a letter carrier. While he had had one four-month tour as an acting assistant station manager, he had nowhere near the same extensive familiarity with the various job titles, job descriptions, and union rules that the woman selected had by reason of her fourteen years of experience in personnel matters. The pertinence of this work background to the job to be filled is clear. In seeking to resolve discrimination which manifests itself in the terms and conditions of employment, it is important for the counselor seeking to resolve the complaint to be able to understand what is legitimately required by the job and what is not.

The person selected for the job was also better trained in EEO matters, having received eighty hours of education on the subject to prepare her to act as a back-up person to fill in for EEO counselors who were absent or unavailable. In effect, the candidate selected had apprenticed for the job. Plaintiff too had experience in EEO matters since he had served on an EEO advisory committee, had attended a conference on affirmative action, and, undoubtedly, had a sincere interest in EEO matters. Nevertheless, plaintiff's expertise was far outweighed by the competition.

Plaintiff's job-related commendations were also less impressive than those of the woman who got the job, who had ten letters of commendation, three cash awards for suggestions, and a special achievement award. While also commendable, plaintiff's record of community service is not of the problem-solving, interpersonal, conflict-resolving sort needed for EEO counselling or otherwise sufficient to match the education, training, and hands-on experience of the successful candidate in these kinds of activities.

Finally, it bears noting that plaintiff's claims of sex and age discrimination are peculiarly unpersuasive. Of the three-member interviewing committee, two of the three were of the same sex and age as the plaintiff. While all three on the interviewing panel were black, three of the ten persons interviewed were white, as is plaintiff. The person ultimately selected was a white female who was the same age as plaintiff. She was selected by a white male who was only four years younger than both plaintiff and the successful candidate.

Plaintiff, with perhaps some justification, complains of the apparent "unfairness" to which he has been subjected, having been

---

**3.** Subsequent to plaintiff's unsuccessful bid to be an EEO counselor in June 1981, which is the failure to promote which became the gravamen of plaintiff's EEO complaint and this lawsuit, plaintiff applied and was turned down for an opening as EEO investigator in December 1981, for four openings as Supervisor Mails at a salary level 15 in November 1981, and for six openings as Supervisor Mails in December 1981. In March 1982, he was again turned down for an opening as an EEO counselor because the position had been filled by reassignment. In May 1982, he was turned down for a position as Supervisor Mails and Delivery. In August 1982, he was turned down for three positions as an EEO investigator in favor of two men who had prior experience as EEO counselors and a woman whose prior experience was as a carrier.

Again, no information, beyond that noted, was presented as to the race, age and sex, or qualifications of those with whom plaintiff competed or who were selected for these positions or of the persons making the selection. Plaintiff's testimony that at one interview for an opening he was the only caucasian present does not help fill this gap. Nor is his claim that women were the ones primarily chosen to EEO positions borne out by the record. In all events, as noted *infra*, whether discrimination may or may not have existed with regard to the filling of any one of these other vacancies, it is clear that it had no causal or other relationship, as part of a pattern or practice or otherwise, with the failure to promote in June 1981, which was entirely merit based.

turned down for so many openings despite his education and sincere good will. However, plaintiff has not demonstrated that this unfairness was because of his race, sex or age. He notes that he had trouble with two of his supervisors, one of whom at least he regards, perhaps accurately, as having a personality problem [4] and who, according to plaintiff—and there is no reason on this record to disbelieve him—physically attacked plaintiff on the job. Certainly, such conduct is wrong, but it is not the kind of wrongdoing that Title VII was enacted to remedy.

The Clerk is directed to enter judgment dismissing the complaint and to mail a copy of the within to all parties.

SO ORDERED.

---

**4.** There is some suggestion that this supervisor was on one occasion accused of bias against persons of the Jewish religion. However, plaintiff disclaims any reliance on claims of religious bias, and, in any event, there is no basis in this record for supposing that any vindictiveness on the part of any of plaintiff's supervisors played a role in his rejection for this or any other promotion. Indeed, he was highly commended for the position for which he was turned down in June 1981 by two of his immediate supervisors.